## LAWE VS. HYDE.

EQUITY: EJECTMENT: PLEADING: PRACTICE. *(1) Forfeitures not enforce-able in equity. (2, 3) Suit in equity changed to ejectment by consent. (4) Special complaint in ejectment setting out plaintiff's title. (5) Lack-ing averments supplied here by stipulation. (6)* COUNTERCLAIM *in ejectment for release of plaintiff's claim of title. (7)* DEMURRER *to counterclaim goes back to complaint.*

DEED. *(8) Omission of grantee's name immediately after words of grant, how cured. (9, 10) Condition subsequent irregularly inserted. (11, 12) Condition subsequent construed.*

| | |
|---|---|
| 39 | 345 |
| 86 | 551 |
| 39 | 345 |
| 88 | 633 |
| 39 | 345 |
| 110 | ²382 |
| 39 | 345 |
| 111 | ⁶469 |
| 39 | 345 |
| 112 | ¹406 |

1. A proceeding in equity to enforce a forfeiture cannot be sustained.

2. A suit in equity may be changed into an action at law by consent. Whether such a change can be otherwise made, is a question not raised by the record in this case.

3. Where it was impossible to decide the cause on the merits while the record presented it as a suit in equity, and both parties had fully argued the merits, and were desirous of a decision thereon, this court reserved its judgment upon the merits long enough to give them an opportunity to amend the record, by stipulation or otherwise, so that the action might stand as one in ejectment.

4. The statute (ch. 141, sec. 4, R. S.), though it does not require the complaint in ejectment to set out the plaintiff's title, does not prohibit special complaints in that form; and it seems a proper form where the rights of the parties depend wholly upon questions of construction for the court.

5. A stipulation of the parties having been filed in this court, that this action should stand as one of ejectment by the plaintiff therein against the defendant, this court holds the stipulation as supplying any missing formal averments required by the statute in complaints of that character, and treats the complaint as a special complaint in ejectment setting out the plaintiff's title.

6. Defendant in ejectment cannot, generally, set up a counterclaim resting on his *legal* title, for a release to him of plaintiff's claim of title, which the answer alleges to be void on its face, and without color of right. *Jarvis v. Peck*, 19 Wis., 74, distinguished.

7. Under the statute, a counterclaim in the answer is a *pleading to the complaint;* and where the latter discloses want of jurisdiction, or fails to state a cause of action, a demurrer to a counterclaim goes back to the complaint.

8. The omission of the grantee's name immediately after the operative words

of grant in a deed, is cured by the *habendum* to him (by his name), his heirs and assigns.

9. Though conditions regularly follow the *habendum*, they are good in any other place.

10. A deed, after the words of grant and a description of the premises by metes and bounds, contained words expressive of a condition subsequent, followed by the words "together with all and singular the hereditaments and appurtenances," etc., and these followed by the *habendum*. *Held*, that it was a good conveyance in fee on condition subsequent.

11. At the date of said conveyance, the Lawrence Institute (since Lawrence University) was incorporated to be "*located*" within certain limits, which included the land conveyed, at such place as the trustees of the corporation should select, and to be "*erected* on a plan sufficiently extensive," etc. Plaintiff deeded thirty-one acres in section 26, town 21 north, range 17 east, to one L., his heirs and assigns forever, "for the consideration of one dollar, for the benefit of the Lawrence Institute," with the condition, that said Institute "shall be *maintained* on section 26, as above described, and, in case of failure or *removal*, the said land shall revert back" to the grantor, or to his heirs or assigns. *Held:*

(1) That this condition, as one to defeat the estate, is to be construed *strictly*, and is satisfied by the selection and continued use of *any part of said section 26*, as the *site of the structures* of the university, and does not require them to be located and maintained on the land conveyed.

(2) That the fact of the conveyance being made, in terms, "for the *benefit*" of said university, does not imply that the land conveyed is to be *occupied* by it; but merely that such land is to be used for the *advantage* of the institution, by occupying, renting, *selling* or otherwise.

(3) That a sale and conveyance of a portion of the land by the university does not work a forfeiture of the title.

12. It appearing that the university is maintained on a part of the land so conveyed by plaintiff, *quære* whether the sale by it of the other part would be a breach, and work a forfeiture, even if the condition were that such university should be maintained on the land conveyed.

APPEAL from the Circuit Court for *Outagamie* County.

The complaint in this action alleged, in substance, that on or about August 3, 1848, "The Lawrence University of Wisconsin" "proposed to erect and maintain at Appleton a collegiate institute, and the plaintiff, being interested in the growth of Appleton, made a donation of certain lands to said university, for the objects and purposes of said institution, and

Lawe vs. Hyde.

for no other, and upon the condition that such lands were not and should not become the absolute property of said university, to be sold or transferred as it might see fit, or to be used for such purposes as it might see fit or desire for its interest; that it was understood and agreed that when such university should cease to use such lands for the purpose of a collegiate institution exclusively, and should sell or dispose of the same or any part thereof for other purposes, such lands should revert to the plaintiff; that, in pursuance of such arrangement, the plaintiff, on the 3d of August, 1848, executed a deed to Amos A. Lawrence, whereby he conveyed said lands in trust and for the benefit of said university, in consideration of one dollar; that in making such deed an ordinary printed form was used or copied from, and in the deed was inserted in writing the following conditions: " The above donation is made on conditions that ' The Lawrence Institute of Wisconsin' shall be maintained on section 26 as above described, and in case of failure or removal the said land shall revert back to said *Lawe*, or to his heirs or assigns;" that the persons acting for the said university and for the plaintiff at the time of the execution of said deed, were not sufficiently versed in law to insert the proper conditions in the deed, and by mutual mistake the same did not truly and fully express the intent and meaning of the parties; that said deed should have contained a condition that said lands were conveyed for the benefit of Lawrence University, for the purpose of a college and university, and for no other purpose, and in case the same should be used for other purposes, or sold by the defendant Lawrence or said university, such deed should become null and and void, and such land should revert to the plaintiff; that on the 5th of August, 1874, said university sold to the defendant *Hyde* about twenty acres of said lands, and that *Hyde* received a conveyance of the same, well knowing the equities of the plaintiff, and had entered into possession of, and was about to sell the same for purposes of speculation in lots, to a large number of persons;

and that the Lawrence University had wholly abandoned the said land so conveyed, for college uses, and had wholly ceased to maintain said institute thereon, and the said Amos A. Lawrence was about to ratify the conveyance to the said *Hyde.* Prayer, for an injunction restraining *Hyde* from selling said lands, and for the judgment of the court correcting the deed to Lawrence and establishing the title of the plaintiff to said lands.

*Hyde* answered that he had become the absolute owner of said lands by the deed named in the complaint; that he had purchased the same without notice of the plaintiff's equities, and had paid a large part of the consideration, and given his note for the balance; and that he had contracted to sell a large portion of said lands. He also set up the statute of limitations as a defense to so much of the complaint as sought a reformation of the deed; and, by way of counterclaim, set up at length his own title, and alleged that plaintiff wrongfully claimed title to said lands, and had brought suit to recover them, creating a cloud upon his title, and asked that plaintiff be adjudged to release to him all claim thereto, etc.

The granting clause of the deed to Lawrence was in the following words: " That the said parties of the first part give and convey for the consideration of one dollar, for the benefit of the Lawrence University, to his heirs and assigns forever, all that piece or parcel of lands," etc.

The plaintiff demurred to the counterclaim for insufficiency of facts; and from an order sustaining the demurrer, the defendant *Hyde* appealed.

*Gerrit T. Thorn,* for appellant:

1. All the facts necessary to bring this case within sec. 29, ch. 141, R. S., are stated in the counterclaim. *Wals v. Grosvenor,* 31 Wis., 682. The counterclaim is substantially an action *quia timet,* and, without the statute, a bill in equity would lie when the party is not in a position to force one claiming adverse title into a court of law to try its validi-

ty. *Moran v. Palmer*, 13 Mich., 368; *Alton Marine & Fire Ins. Co. v. Buckmaster*, 13 Ill., 201. 2. Conditions subsequent, which tend to avoid estates, are not regarded with favor, and are strictly construed as against the lessor or grantor. *Jackson v. Silvernail*, 15 Johns., 278; *Livingston v. Stickles*, 7 Hill, 253; *Hadley v. Hadley M'f'g Co.*, 4 Gray, 140; 12 Barb., 440; 27 Miss., 203; 49 Ill., 425. 3. Evidence would not be received of the nonpayment of a nominal consideration for the purpose of destroying the deed. The words of the deed were effectual as a bargain and sale. *Bank of U. S. v. Housman*, 6 Paige, 526; *Meriam v. Harsen*, 2 Barb. Ch., 232; *Wood v. Chapin*, 13 N. Y., 509; *Lynch v. Livingston*, 6 id., 422; *Long Island R. R. Co. v. Conklin*, 29 id., 572. 4. The true construction of the condition is, that a building for educational purposes, to be used as such under the auspices of the Lawrence Institute, should be built and maintained; and the *bona fide* erection of the building satisfied the condition and vested the *title in fee* absolutely in the Lawrence Institute. *Larabee v. Carleton*, 53 Me., 211, 213; *Mead v. Ballard*, 7 Wall., 290. 5. Any other construction of the condition would render it void as repugnant to the nature of the estate conveyed. It would be a prohibition of the power of alienation, and of no force. Co. Litt., 206; *Doe v. Biggs*, 2 Taunt., 109; *Jossaume v. Abbot*, 15 Sim., 127; *Youde v. Jones*, 13 M. & W., 534; *Webb v. Webb*, 29 Ala., 606; *Sitzman v. Pacquette*, 13 Wis., 312; *Stucklesby v. Butler*, Hob., 300; *McWilliams v. Nisly*, 2 Serg. & R., 513; *Newkerk v. Newkerk*, 2 Caines, 345; *Craig v. Wells*, 1 Kern., 281; *DePeyster v. Michael*, 2 Seld., 467; *Overbagh v. Patrie*, 8 Barb., 28; *S. C.*, 2 Seld., 510; *Hill v. Priestly*, 52 N. Y., 635; Shep. Touch., 129–133. Possibly the words of the deed might be construed as a covenant to erect and maintain a building on the land, but this construction would not help the defendant. *Paschall v. Passmore*, 3 Harris, 295, 307; 49 N. H., 322. 6. The deed to Lawrence

conveyed the absolute title in fee to the institute. It was a simple trust without further specifications or directions, and the *cestui que trust* had the right of possession and the disposing of the estate. Under the statute of uses, 27 Henry VIII, c. 10, the beneficial use was converted into the legal ownership without any action on the part of the trustee. *Goodrich v. City of Milwaukee*, 24 Wis., 429; Lewin, 21; Shep. Touch., 508; *Welch v. Allen*, 21 Wend., 147; *Nicoll v. Walworth*, 4 Denio, 385; *Ring v. McConn*, 10 N. Y., 268; *Ex parte De Kay*, 4 Paige, 403. Such interest cannot be made incapable of alienation, or settled in a series of limitations tending to a perpetuity. *Nichols v. Levy*, 5 Wall., 441. Our statute restricting the suspension of the absolute power of alienation is applicable to every species of conveyance and limitation. *Yates v. Yates*, 9 Barb., 324; *Levy v. Levy*, 33 N. Y., 130; *Beekman v. Bronson*, id., 308; *Bascom v. Albertson*, 34 id., 598. Where the power of alienation is suspended for an indefinite period, the trust is void. *Donaldson v. Am. Tract Soc.*, 1 N. Y. Sup. Ct. R., Addenda, 15; *Leonard v. Bell*, id., 608; *Kiah v. Grenier*, id., 388; *S. C.*, 36 N. Y., 220. In this case the contingency may never happen. There may never be a *failure or removal* of the institute. All conditions which, if complied with, must lead to a perpetuity, are void (*Att'y Gen. v. Greenhill*, 9 Jur., N. S., 1307); and this is such a condition. *Boynton v. Hoyt*, 1 Denio, 54; *Bascom v. Albertson, supra; Ferris v. Gibson*, 4 Edw., 707; *Arnold v. Gilbert*, 5 Barb., 190; *Proprietors etc. v. Grant*, 3 Gray, 142, and numerous cases there cited; Co. Litt., 265 a; 45 Me., 359; 8 Blackf., 138; 2 Dutch., 13; 2 Patt. & Heath, 357; *Curtis v. Lakin*, 5 Beav., 147; 4 Kent, 283; 46 N. H., 234; 16 Wend., 121; *Sears v. Russell*, 8 Gray, 86; *Sears v. Putnam*, 102 Mass., 5-7; *Taylor v. Gould*, 10 Barb., 398, and cases there cited; *Welch v. Foster*, 12 Mass., 97; *Stanley v. Colt*, 5 Wall., 119.

*Gabe Bouck*, for respondent:

1. The counterclaim is not well pleaded. An equitable defense by way of counterclaim to a legal action, means the existence of such a state of facts, as would induce a court of equity, in the exercise of its general jurisdiction, to restrain the prosecution at law. *Cramer v. Benton*, 4 Lans., 293. Such a counterclaim can be interposed only in cases in which before the code the defendant would have been compelled to file his bill in equity to assert his rights. *Gleason v. Moen*, 2 Duer, 639; *Leavenworth v. Parker*, 52 Barb., 132; *Boston Silk & Woolen Mills v. Bull*, 37 How. Pr., 299. The general rule is, that an action lies to remove a cloud only when the defect does not appear upon the record. 1 Story's Eq. Jur., § 700; *Cox v. Clofft*, 2 Coms., 123; *Farnham v. Campbell*, 34 N. Y., 480; *Fonda v. Sage*, 48 id., 173. This court now holds that a party can bring his action under the statute (sec. 29, ch. 141, R. S.) upon a mere adverse claim of title; but an action not brought under the statute cannot be sustained if the defects of the adverse claim appear upon the record. *Shepardson v. Supervisors*, 28 Wis., 593; *Wals v. Grosvenor*, 31 id., 684. Where the claimant of the adverse title brings suit at law, equity will not interfere in behalf of him in possession. *Ins. Co. v. Bailey*, 13 Wall., 616. 2. The only construction that can be given to the condition in the deed is, that the university should be maintained upon the lands donated, in sec. 26. It is no compliance with the condition to maintain the university on a part of the lands, and divert the balance. No precise words are required to make a condition subsequent; the condition must be founded upon the intent of the parties. *Underhill v. S. & W. R. Co.*, 20 Barb., 455; *Rogan v. Walker*, 1 Wis., 527; 2 Chand., 133. The deed upon its face purports to be a gift. It does not pretend to grant, bargain or sell, and does not even name any grantee to whom it "gives and conveys." 3. The condition is valid, unincumbered with any limitations. It is a donation for certain purposes, with reversion to grantor upon failure to use

the land for those purposes. The validity of such conditions is undoubted. *Plumb v. Tubbs*, 41 N. Y., 442; 4 Kent's Com., 126; 2 Washb. R. P., 2; *Police Jury v. Reeves*, 6 Martin, N. S., 224; *Pickle v. McKissick*, 21 Pa. St., 232; *Kiek v. King*, 3 id., 436; *Collins v. Marcy*, 25 Conn., 242; *Crary v. Wells*, 1 Kern., 315; *Crary v. Blanchard*, 8 Pick., 284; *Austin v. Cambridgeport*, 21 id., 215; *Sperry v. Pond*, 5 Ohio, 387; *Nicoll v. E. R'y Co.*, 12 N. Y., 121; *Gilbert v. Peteler*, 38 id., 165; *Congregational Society v. Stark*, 34 Vt., 243; *Gillis v. Bailey*, 21 N. H., 149; *Basher v. Cobb*, 36 id., 344; *Cornelius v. Joins*, 20 N. J., 376; *Dolan v. Mayor of Baltimore*, 4 Gill, 394; *Harris v. Shaw*, 13 Ill., 456; *Carter v. Chandran*, 21 Ala., 72; *Ludlow v. N. Y. & H. R. R. Co.*, 12 Barb., 440; *Gillespie v. Broas*, 23 id., 370; *Spaulding v. Hallenbeck*, 39 id., 79; *Knowlton v. Walker*, 13 Wis., 295; *Smith v. Smith*, 23 id., 176; *Dorr v. Harrahan*, 101 Mass., 531. 4. Such conditions as this are not in conflict with the statute of perpetuities. An estate being subject to a condition does not affect its capacity of being aliened. 2 Washb. R. P., p. 19; *Taylor v. Sutton*, 15 Ga., 103; *Wilson v. Wilson*, 38 Me., 18; *Underhill v. Sar. & Wash. R. R.*, *supra.* When an estate in fee simple is created on conditions, the entire estate does not pass out of the grantor. 2 Washb. R. P., 19; *Proprietors, etc., v. Grant*, 3 Gray, 146; *Ludlow v. N. Y. & H. R. R.*, *supra;* 4 Kent's Com., 127. 5. When public spirited citizens donate land for charitable or educational purposes, it should be strictly devoted to such uses, and the law should not permit a diversion to other uses.

The following opinion was filed February 29, 1876.

RYAN, C. J. The complaint purports to be against Mr. Lawrence, the grantee of the respondent, the University and the appellant, in equity, for reformation of the condition subsequent in the respondent's deed, for forfeiture for condition broken, and for possession. Aside from the statute of limita-

tions, a proceeding in equity to enforce a forfeiture cannot be sustained. *Clark v. Drake*, 3 Pin., 228.

The case was argued at the bar as an action of ejectment for forfeiture for breach of the condition as it stands in the deed. And it was stated that the respondent had abandoned his equitable proceeding, discontinued as to Mr. Lawrence and the University, and was prosecuting the case against the appellant alone, as an action of ejectment.

The return does not disclose such discontinuance, or any action of the parties or of the court below tending to change the character of the cause. The question therefore is not here, whether, under the code, such a change of a suit in equity into an action at law may be made. See note of DIXON, C. J., to *Brayton v. Jones*, 5 Wis., 627, 2d ed. Of course this can be done by consent; but in the meantime, we do not feel authorized to decide the questions argued on this appeal, when they are not raised by the record before us. The questions are important in principle and to the parties. And both parties appear anxious for a decision of the case upon the merits. It was well and fully argued on both sides, and, if properly before us, we are prepared to pass upon it. We have therefore concluded to reserve our judgment long enough to give the parties an opportunity to amend the record by stipulation or otherwise, so that the cause may stand as an action of ejectment by the respondent against the appellant. If such amendment of the record be made, we will pass upon the questions submitted, without further argument; otherwise we will decide the case as it now stands in the record.

Judgment reserved.

The following opinion was filed March 21, 1876.

RYAN, C. J. Upon the suggestion made in the former opinion on this appeal, the parties have since filed a stipulation that the action shall stand as an action of ejectment by

the respondent against the appellant for the recovery of the premises in controversy. We hold the stipulation as supplying any missing formal averments required by the statute in complaints of that character, and shall consider the complaint as a special complaint in ejectment, setting out the respondent's title. The statute does not require, but does not prohibit, such special complaints. And it seems a proper form when, as in this case, the rights of the parties appear to depend wholly upon questions of construction for the court. See *Sage v. McLean*, 37 Wis., 357.

The statute authorizes an equitable, as well as a legal, defense in ejectment. An equitable defense generally, if not necessarily, concedes the legal title in the plaintiff. And, with a view of bringing together the legal title and the possession, an equitable defense can be made by counterclaim only. *Lombard v. Cowham*, 34 Wis., 486; *Dupont v. Davis*, 35 id., 631.

The appellant's counterclaim in this case rests clearly on his legal title, setting up no equitable defense. Judgment for him on his answer would be equivalent to the affirmative judgment prayed by his counterclaim. And it looks like an incongruity to pray that the respondent should release to the appellant a claim of title which the appellant maintains to be void on its face, without color of right. If such a counterclaim could be supported, we do not perceive why every defendant in ejectment might not counterclaim a release from the plaintiff. Such a counterclaim is very distinguishable from that in *Jarvis v. Peck*, 19 Wis., 74. We must hold this counterclaim ill taken.

The effective difference between a mere answer and a counterclaim is familiar to us all. But the essential distinction between them as pleadings does not appear to be so clear. The question whether a demurrer to a counterclaim would reach back to the complaint is suggested, but not decided, in *Dietrich v. Koch*, 35 Wis., 618. Generally, perhaps, the an-

swer proper and counterclaim are indistinguishable, as in that case, where the demurrer was held to reach back to the complaint, through the same pleading of the defendant as an answer. See *Benedict v. Horner*, 13 Wis., 256; *Congar v. Chamberlain*, 14 id., 258; *Jarvis v. Peck*, 19 id., 74; *McConihe v. Hollister*, id., 269; *Matteson v. Ellsworth*, 28 id., 254; *Resch v. Senn*, 31 id., 138; *Lombard v. Cowham, supra*, and many other cases in this court. The distinction has been so slight that it has sometimes been a nice question of construction whether the pleading be an answer proper or a counterclaim or both in one. But aside from all rules of construction, the statute itself appears not only to make a counterclaim a pleading to the complaint, but to make it essentially an answer in all cases; for it requires the answer to set up new matters constituting defense or counterclaim. Whatever may be its effect by way of cross action, it is certainly a pleading to the complaint. And the old rule that demurrers reach back to the first defective pleading still applies where the complaint discloses want of jurisdiction or fails to state a cause of action (*Lawton v. Howe*, 14 Wis., 241; *Ferson v. Drew*, 19 id., 225; *Eaton v. North*, 25 id., 514); and demurrers to returns to original writs go back to the petition or information on which the writ issued. *State v. Tierney*, 23 Wis., 430; *State v. Braun*, 31 id., 600; *State v. Supervisors*, 34 id., 169. So the demurrer here reaches the merits of the complaint, and brings us to the real question in the cause.

The omission of the grantee's name immediately after the operative words of grant in the respondent's conveyance is cured by the *habendum* to the grantee, his heirs and assigns. *Jamaica, etc., v. Chandler*, 9 Allen, 159.

"Conditions regularly follow the *habendum*, but are good in law in any other place." *Horner v. Railway Co.*, 38 Wis., 174. This was always the rule. *Cromwell's case*, 2 Rep., 696.

The respondent's deed is therefore a good conveyance in

fee, upon condition subsequent. Co. Litt., 201a. And the question here is the construction of the condition.

The rule of construction is old, certain and uniform. " *Conditio beneficialis, quæ statum construit, benigne, secundum verborum intentionem est interpretanda; odiosa autem, quæ statum destruit, stricte, secundum verborum proprietatem, accipienda*" (*Fraunces' case*, 8 Rep., 89b; Co. Lit., 218a); "as strictly as the words of any penal statute," as said in *Rungun v. Fogosse*, 1 Plowd., 1; *Jackson v. Silvernail*, 15 Johns., 278; *Hadley v. Hadley*, 4 Gray, 140; *Morse v. Ins. Co.*, 30 Wis., 534.

At the date of the respondent's conveyance, the Lawrence Institute, since called the Lawrence University, was incorporated, to be located within certain limits, which include the land conveyed, at such place as the trustees of the corporation should select, and to be erected on a plan sufficiently extensive, etc. Session Laws of 1847, p. 5.

This location clearly intends the selection and acquisition of the site of the structures for the use of the university. And we have do difficulty in holding the site so to be selected and acquired to be what the condition of the respondent's deed requires to be maintained. The location of the charter and the maintenance of the deed both refer to the site of the proposed university.

Neither could well refer to existing structures for a university. Even the village of Appleton, the forerunner of the present city, does not appear to have been yet founded; certainly not incorporated. Ch. 96 of 1850; ch. 127 of 1853. The proposition of the charter was to found a seat of learning in the wilderness. A site could be presently selected and acquired; but a naked site only, for future structures. So the charter says, and so the deed implies.

The location of the charter was a proceeding *in principio*, without antecedent. But the maintenance of the deed implies, as an antecedent, location under the charter. Mainte-

Lawe vs. Hyde.

nance presupposes existence, as a condition absolute. What is *in posse* cannot be maintained, but only what is *in esse*. The university might be located, anytime, anywhere, within the terms of the charter. But it could be maintained no-where until it had been located somewhere. The rule of con-struction will not permit us to enlarge the word used, in aid of the condition, so as to import that the university shall be first located and thereafter maintained, within the limits indi-cated. The condition requires maintenance only, implies location under the charter already made, and rests on the maintenance of that.

It is indeed the university which the condition requires to be maintained. If the sense were an extant university, with its grounds, buildings, library, apparatus, faculty and stu-dents, to constitute it one, the condition might well be, as presently suggested, void for impossibility. But we must construe words according to the conditions under which they are used. The site of a university is a part of it. A site in-deed is the first requisite for it. And a site selected and ac-quired for a prospective university, presently to be raised up-on it, might well be regarded as an inchoate university; and as such could be maintained. We do not see what else the term could mean under the circumstances; and it can mean that.

The condition provides reverter of the estate granted, upon failure or removal. Removal plainly means removal of the site of the university elsewhere. Failure appears to mean failure to establish the university upon the site. The rule of construction will not warrant the introduction of another an-tecedent for the word, so as to signify failure to locate. Main-tenance is the antecedent of both words; removal of the uni-versity to another site, and failure to establish it on this site, appear equally to violate the condition to maintain on this site. The object of the condition is the maintenance of the site of the university. Change of site or failure of the uni-versity alike defeat the object.

There is no limit of time in the condition for its operation. It runs from the delivery of the deed. If it related to a university in actual operation, or if, at the date of the deed, the location of the university had not been made, or had been made elsewhere than the condition indicates, it might be a grave question whether the condition would not be void, as uncertain or impossible. Co. Lit., 206 a, b, 219 a; 2 Greenleaf's Cruise, 4; Washb., 447.

And the most favorable construction, and we hold the true construction, of this condition is that it relates to a site selected for the university under the charter.

As the condition implies a location made, so it implies where it has been made. And it is very apparent that it is not on the land conveyed. Whether the conveyance was drawn by skillful or unskillful persons, if the condition related to location on the land conveyed, present or future, it would have been the most obvious and easy thing to say.

If such had been the object of the conveyance and of the condition, it is almost incomprehensible that it should have been overlooked or left to argumentative inference. It appears to us that no person of sufficient intelligence to draw the deed, lawyer or layman, could well avoid direct expression of so radical and vital a fact, so readily made; and go out of the way, in more difficult circuity of language, to obscure the intent. Indeed not to obscure it, but to negative. For the condition specifies the land to revert upon breach, "the said land," that is the land conveyed, which is part of section twenty-six, but provides for the maintenance of the university on section twenty-six, at large, without limit of part, implying anywhere within the section. It says section twenty-six as above described, and so it is above described, as a section may best be, by its town and range; but it says, in that regard, neither lot one nor lot two, nor "the said land" in the section, but the section itself, absolutely, without other description or limitation. We cannot hold the section as above

described to mean some thirty acres of the section above described. Words, expressing the whole cannot, to aid a forfeiture, be held to intend a part only; they include the part, but are not limited to it. The two descriptions, section twenty-six as above described, and the said land, stand in apparent contrast, signifying different things. If the conveyancer had intended the same thing, he must have chosen language to conceal and not to express the intention. The two phrases, so used, could not well be forced by any rule of construction into one meaning. Certainly not to aid a condition subsequent inserted by a grantor in his conveyance, and set up by him to defeat his grant. *Verba chartarum fortius accipiuntur contra proferentem.*

The respondent's conveyance is to Mr. Lawrence, for the *benefit* of the university. Benefit is here equivalent to advantage, not to occupation; advantage by occupying, renting, selling, or otherwise. Benefit includes occupation, but is not confined to it. It is a broad word. A devise of the benefits of real estate for a term, under a will devising the fee elsewhere, appears to have been held to vest an estate in the land for the term. *McCullough's Appeal*, 4 Yeates, 23. Here the word seems to include any beneficial use which may be made of the fee simple. And here again it is difficult to comprehend, if the purpose of the grant was a site for the university, how the conveyancer, expert or inexpert, contrived to miss some direct, definite and obvious word signifying site, and to lose his meaning in so large and almost indefinite a word as that used. And so the deed, outside of the condition, is in striking accord with our construction of the condition itself.

If we had been able to adopt the respondent's construction, we are not at all sure that it would have availed him. For it appears that the university is maintained on part of the land conveyed. And it is not certain that the sale of the other part would work a breach of the condition and a reverter of the

whole. For it seems that such a condition must defeat the whole estate or none. Shep. Touch., 127; *Cabet's case*, 1 Rep., 83 b; 2 Greenleaf's Cruise, 3. And it might be difficult to enforce forfeiture of an estate in land for failure to maintain on it what is maintained on part of it.

"This condition, like every condition to defeat an estate, must be construed strictly, not to say literally. If the grantors intended more, they should have expressed it." *Hadley v. Hadley, supra.* If it was the intent that the university should be located and maintained on the land conveyed, and that all the land conveyed should always be used as a site for the university, and no part of it for any other purpose, we can only say that the condition fails to express such intent.

In our view, there does not appear in the complaint any breach of the condition subsequent in the respondent's deed, to work a reverter. The complaint therefore fails to state a cause of action, and the demurrer should have been sustained to it.

*By the Court.* — The order of the court below is reversed, and the cause remanded with directions to sustain the demurrer to the complaint.

LYON, J., took no part in this case, having been a trustee of the Lawrence University during some of the proceedings involved.